## Case No. 12,346.
### The SARAH HARRIS.
[7 Ben. 177.] [1]

District Court. S. D. New York.    Feb., 1874.

MARITIME LIEN—ADVANCES—CREDIT OF VESSEL—APPLICATION OF PAYMENT—COMMISSIONS—FREIGHT—COSTS.

1. A British vessel, in distress at St. Thomas, was sold there. One of the purchasers applied to L. & Co., to advance what was necessary to repair her, and put in their hands $2,000 on account of such advances. L. & Co., made advances, the account of which was signed by the master, amounting to $4,020 03. The vessel having gone to New York, was there libelled by L. & Co., and the court decreed that they recover the amount of moneys advanced or disbursed by them for repairing the vessel and to pay for necessary repairs or supplies. The commissioner, to whom it was referred to ascertain the amount, reported $2,648 67, being the said amount of $4,020 03, after deducting the $2,000, with interest, and $250, "commissions for disbursing same and sundries." The claimants excepted to the report. The evidence, as to items composing $1,654 13 of the $4,020 03, failed to show that they were paid for the repairs and refitting of the vessel. The libel stated that the vessel had carried freight. and prayed that it might be applied to the libellants' claim. but the libel was not filed against the freight, nor was it attached on process. Held. that, although the persons who were to be treated as owners of the vessel. were present and gave directions in person as to the advances, yet the fact that the vessel was foreign to St. Thomas. and that such owners and master did not belong to St. Thomas, made the case one of advances on the credit of the vessel.

[Cited in Stephenson v. The Francis, 21 Fed. 722.]

2. As the payment of the $2,000 was made towards the refitting and repairing of the vessel, it must all be applied as a payment on account of the $2,365 90 which was proved to have been paid for such refitting and repairs.

3. The libellants could not enforce in this suit any lien on the vessel, for advances for the purchase of the vessel.

4. Commissions on such advances as were made, when agreed on or shown to be customary in the trade. are proper items of allowance: but there was no evidence in this case to sustain the allowance of the $250.

5. The court could make no adjudication as to the freight.

6. The libellants were entitled to a decree for $365 90 gold, with interest at 6 per cent., but without costs.

In admiralty.

J. E. Burrill. for libellants.
E. D. McCarthy, for claimant.

BLATCHFORD, District Judge. The decision of the court in this case [Case No. 12,345], was, that the supplies and repairs furnished to the vessel at St. Thomas. were, so far as they were necessary, furnished on the credit of the

---

vessel, so as to create a lien therefor on the vessel, under the maritime law; and that such lien extended to the moneys which the libellants advanced to pay for the necessary supplies and repairs, and was not displaced by the substitution therefor, either originally or afterwards, of any personal credit. The interlocutory decree was. that the libellants recover against the vessel "the amount of moneys advanced or disbursed by them at St. Thomas, to her master, Terence Cochran, or otherwise, for repairing, supplying or refitting the said vessel, so far as such moneys were necessarily disbursed to pay for repairs and supplies which were necessary and proper to enable the vessel to proceed to sea with safety," and it was referred to a commissioner "to ascertain the amount of such moneys," and to report thereon, and also "to ascertain and report what freight money, if any, came to the hands of Burdett & Pond, that may be applicable in payment of such advances," and the decree reserved all questions in regard to such freight moneys, and all other questions, until the coming in of such report.

The commissioner reports that he adopts the statement of account marked "L," annexed to the deposition of James D. Lamb, one of the libellants, taken on commission, as furnishing the correct amount of moneys advanced and disbursed by the libellants, at St. Thomas, to Terence Cochran, master of the vessel, or otherwise, "for repairing, supplying or refitting the said vessel, less a credit of two thousand dollars cash." He reports the amount of moneys so advanced and disbursed, as per such statement, at $4,020.03 gold. From this he deducts, as a cash payment, $2,000, leaving a balance of $2,020.03. To this balance he adds interest thereon from March 28th, 1871, to December 2d, 1873, $378.64, and also an item of $250 for "commission disbursing same and sundries since date of Statement L," making a total amount, exclusive of freight, of $2,648.67. He also reports, that the freight money collected by Burdett & Pond amounted to $1,520.67 gold.

The claimant has filed 22 exceptions to this report, and the libellants have filed 5. The main objection taken on the part of the claimant to the report is, that the commissioner, in allowing, as a whole, all the items contained in the statement L, has allowed items, which are not only not shown to have been items falling within the language of the interlocutory decree, as being for moneys necessarily disbursed to pay for repairs and supplies which were necessary and proper to enable the vessel to proceed to sea with safety. but are shown to have been items not falling within such language. An examination of the evidence shows that, of the $4,020.03, only items amounting to $2,365.90 are proved to be within the language of the decree. and that there are of unproved and unallowable items. $1,654.13.

It is contended, for the libellants, that. even if the libellants are not entitled, as against the vessel, to recover the $1,654.13, they are

---

[1] [Reported by Robert D. Benedict. Esq.. and B. Lincoln Benedict. Esq., and here reprinted by permission.]

entitled to apply sufficient of the $2,000 paid to them by Loren Cochran, to reimburse the $1,654.13, and then apply the rest of the $2,000 towards the $2,365.90. That would be, in effect, the same thing as allowing against the vessel the $4,020.03, and crediting the $2,000 generally, as a payment thereon. It is urged, that the claimant is not entitled to the benefit of that $2,000, because it was not paid by him, or by his agent, or out of the proceeds of any property of his. But the answer to this view is, that the testimony is explicit, that the $2,-000 was deposited towards refitting and repairing the vessel. James D. Lamb says: "On account of the amount to be expended on the Sarah Harris." William C. Lamb says: "Towards refitting the Sarah Harris;" and the latter says, that the $4,020.03 was expended "in the purchase and refitting of the vessel." Having the $2,000 on hand for the express purpose of repairing and refitting the vessel, the libellants must be held to have acquired no lien on the vessel for repairs and supplies for any amount, except such as the $2,000 would not cover. They dealt with the vessel as being owned by Fullmore and the one or the other of the Cochrans, and were put in funds by them, to the extent of $2,000, for disbursing and advancing moneys for repairs and supplies, to be made and furnished. So far as the vessel is concerned, and on a question as to a lien on the vessel, the vessel and any claimant of her, as against such lien, is entitled to have the $2,000 applied to the repairs and supplies. If the libellants failed to take proper measures to be reimbursed their advances for the purchase of the vessel, they cannot enforce, in this suit, any lien on the vessel for such advances, nor can they, in this suit, apply, towards such advances, money which was put into their hands to be applied to pay for the repairs and supplies in respect of which a lien may be established in this suit.

Even though the vessel be regarded as having been the property of Fullmore, and of one or the other of the Cochrans, when the advances were made, and even though such owners were present, and gave directions in person for the advances, yet the fact that the vessel was all the time one foreign to St. Thomas, in her nationality and register, and that her owners and master did not belong at St. Thomas, taken in connection with all the evidence, make the case one of advances on the credit of the vessel. So far as I allow them, they were necessary, and were made at the request and with the approval of the master, and the presumption that the advances were made on the credit of the vessel is not repelled by satisfactory proof of the existence of funds for the purpose beyond the $2,000, or of any credit upon which funds could be raised. Nor was the lien displaced by the taking of anything in discharge or satisfaction of the sums advanced beyond the $2,000. The Grapeshot, 9 Wall. [76 U. S.] 129; The Lulu, 10 Wall. [77 U. S.] 192; The Kalorama. Id. 204; The Emily Souder, 17 Wall. [84 U. S.] 666.

The commissioner allowed $250, as a commission for disbursing the $4,020.03 "and sundries since date of Statement L." The $250 is claimed in the libel. It is not contained in Statement L, which bears the signature of Terence Cochran. Nor is it referred to as an item of claim in the testimony of either of the libellants. The testimony of each of them speaks of the claim as one for $4,020.03. Commissions on advances, such as those in this case, where agreed on or shown to be customary in the trade, are proper items of allowance. The Emily Souder, supra. But, in the present case, there is no evidence which can apply to the commission allowed. There is a witness who states that the usual commission at St. Thomas "for merchants making advances on freight" is 5 per cent. There was not here any advance on freight. Nor is there any evidence which can apply to the allowance of anything for "sundries."

The allowance to the libellants will, therefore, be $365.90 gold, with interest from March 28th, 1871, at 6 per cent. per annum. The libel states that the vessel has earned freight moneys, which should be applied to the payment of the libellants' claim, and prays that such freight moneys may be so applied, but the libel is not filed against them, and they have not been attached on process. The answer denies the right of the libellants to the freight moneys. I do not see how this court can make any adjudication in this suit as to the freight moneys.

I think this is a proper case for not allowing costs to either party. Shaw v. Thompson [Case No. 12,726].

[This cause was appealed to the circuit court, where the decree of this court, as rendered in Case No. 12,345, was affirmed. Id. 12,347.]